IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WALTER L. WRIGHT, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. DKC-24-1018 |
| DR. CHRISTOPHER KIRCHER, STEPHEN L. MURPHY, WARDEN FREDERICK ABELLO, | * * | |
| Defendants. | * | |

***

## MEMORANDUM OPINION

Plaintiff Walter L. Wright, a pre-trial detainee at the Montgomery County Correctional Facility ("MCCF"), filed this civil rights action alleging that he had not received adequate medical treatment for his fractured leg. ECF No. 22. Defendants Stephen L. Murphy and Warden Frederick Abello filed a Motion to Dismiss in response to the Amended Complaint. ECF No. 39. Mr. Wright opposes the motion. ECF No. 42.

Mr. Wright has filed a Motion for Summary Judgment (ECF No. 36) which is opposed by Defendants Mr. Murphy and Warden Abello (ECF No. 37). Mr. Wright filed a Request for Admissions pursuant to Fed. R. Civ. P. 36(a) and two Motions to Supplement Pleading pursuant to Fed. R. Civ. P. 15(d). ECF Nos. 41, 46 and 48. Defendants Mr. Murphy and Warden Abello have moved to strike the request for admissions.[1] ECF No. 47. There is no need for a hearing. *See* Local Rule 105.6 (D. Md. 2025).

---

[1] Because discovery has not commenced in this case, Mr. Wright's requests for admissions are premature and Defendants' Motion to Strike will be granted. *See* Local Rule 104.4 (D. Md. 2025) (discovery shall not commence and disclosures need not be made until a scheduling order is entered).

For the reasons set forth below, the Amended Complaint will be dismissed as to Defendants Mr. Murphy and Warden Abello. Mr. Wright's Motion for Summary Judgment and his Motions to Supplement Pleading shall be denied.

## BACKGROUND

A.  Complaint Allegations

Mr. Wright sustained an injury to his left leg during his arrest. He was treated at Suburban Hospital, Johns Hopkins, where, after his leg was x-rayed, it was confirmed that he had a "non-displaced fracture of the lateral malleolus." ECF No. 23 at 1 (Med. Record dated Feb. 1, 2024). The "clinical impression" was that Mr. Wright had a "closed fracture of distal end of left fibula." *Id*. at 2. The cause was noted as "blunt injury." *Id*. at 1. The Emergency Room ("ER") physician placed an order for a "walking boot" and prescribed oxycodone, 5 mg with a note of "TAKE HOME 1 packet" written next to the notation. *Id*. at 2.

Mr. Wright states that after he arrived at MCCF on February 1, 2024, he was never told he was prescribed oxycodone by the ER physician and was given Tylenol and Ibuprofen instead which he found ineffective to control his pain. ECF No. 22 at 3. Although he admits that the physical therapy he received at MCCF was beneficial, he states that the delay in providing surgery caused prolonged pain and caused his leg to shrink. *Id*. Mr. Wright recalls that Defendants Stephen L. Murphy, Dr. Kircher, and the Physical Therapist advanced a "medical theory that injuries such as bones, ACLs, sprains, etc. heals themselves." *Id*. He takes umbrage with this theory, however, because of the pain he suffered in the interim and claims that "there is a type of energy running through plaintiff's body that halts the healing process." *Id*. at 4.

Mr. Wright asserts that Defendant Stephen L. Murphy is the Division Chief of the Department of Correction and Rehabilitation Medical and Behavioral Health Services who

2

enforces a policy that prohibits the use of any narcotic pain medicine at MCCF even if it is recommended by an outside doctor. ECF No. 22 at 6. He further claims that Mr. Murphy has acknowledged that Tylenol and Ibuprofen were ineffective to control Mr. Wright's pain but he, along with Dr. Kircher, claimed that he could not do anything but make recommendations to the healthcare provider group that manages medications. *Id*. at 4. In Mr. Wright's view, this is a policy or practice that allows county medical officials to defy a certified physician's medical order and continue to disregard known risks of more harm to patients. *Id*.

Because Defendant Frederick Abello is the Warden at MCCF, Mr. Wright claims that he is a policy maker that has shown deliberate indifference to the pain inflicted on Mr. Wright as a result of the denial of any narcotic pain medications. ECF No. 22 at 5-6. According to Mr. Wright, the policy or practice enforced by Warden Abello requires that all prescribed pain medication by outside physicians with be substituted with Tylenol and Ibuprofen. *Id*. Mr. Wright states that this policy or practice is abusive and poses a substantial risk of serious harm to him and every patient at MCCF with serious injuries but deliberately disregards that risk. *Id*.

Mr. Wright seeks monetary damages, a declaratory judgment, and preliminary injunction. *Id*. at 8-9. Specifically, Mr. Wright seeks an order from this court enjoining Defendants from defying outside doctors' prescriptions and orders. *Id*. at 9.

B.   Mr. Wright's Motions to Supplement Pleadings

Mr. Wright invokes Fed. R. Civ. P. 15(d) as a basis to submit what he claims are facts that have come to light since the time he initiated this lawsuit. ECF Nos. 41 and 48. Rule 15(d) permits this court to allow a "party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented" despite the

3

fact that the original pleading is defective.  Presumably, Mr. Wright seeks to supplement his Amended Complaint with the following allegation:

> Plaintiff [has verified] through acts and omissions by Dr. Kircher that he does in fact have a heart monitor in his chest that the county correctional medical facility personnel have access as a result of recent x-ray findings an apparatus that as evasive and as it is invasive. That is, evasive because, you may suspect it is there, it would be against the county's interest to reveal its secret. Invasive because it is a unreasonable body cavity intrusion on plaintiff's privacy integrity. Especially, in plaintiff's rectum, genital, chest, throat, and fractured lower leg and ankle that hurt now as it did when first injured that is preventing the injuries from healing due to the apparatus continuous vibration.

ECF No. 41 at 1-2.  Mr. Wright's second motion seeks to supplement the Amended Complaint with the same allegation but alleges that the "nonmedical monitor" is a listening device instead of a "heartpacer" and suggests that this court can see for itself if it requires the state to produce the x-rays Mr. Wright references in his motions.  ECF No. 48 at 6.

The language used in Rule 15(d) is permissive, not mandatory.  The proposed supplemental information is without any apparent factual basis and appears instead to be a product of irrational thought.  A factually frivolous claim involves "allegations that are fanciful, fantastic, and delusional.  As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez,* 504 U.S. 25, 32–33 (1992) (internal citations and quotation marks omitted).  To determine if a claim is frivolous, this court may "apply common sense." *Nasim v. Warden, Md. House of Correction,* 64 F.3d 951, 954 (4th Cir. 1995) (en banc).  The claim that Defendants have implanted a non-medical listening device, or any other kind of device, in Mr. Wright's body that causes vibrations that interrupt the healing process is frivolous.  The motions will be denied.

STANDARD OF REVIEW

In reviewing the complaint in light of a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained that a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere

5

possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Mr. Wright filed a Motion for Summary Judgment.  ECF No. 36.  Pursuant to Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

ANALYSIS

Defendants Warden Abello and Mr. Murphy seek dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because Mr. Wright failed to exhaust administrative remedies; his allegations fail to state a viable constitutional claim against them in either their official or individual capacities; and they are entitled to qualified immunity.  ECF No. 39.  Mr. Wright responds that administrative remedies were unavailable because his complaints went unanswered and the remedy he sought was unavailable.  ECF No. 42 at 5-8.  Additionally, he claims that he has stated a claim adequately pursuant to *Monell*[2] and that his constitutional claims against Warden Abello and Mr. Murphy in their individual capacities are adequately stated because his claim is not premised on a mere disagreement on the treatment provided.  *Id*. at 9-20.

In his Motion for Summary Judgment, Mr. Wright relies on his own declaration stating that he suffered an injury on January 31, 2024, that was inflicted by an arresting officer.  *See* ECF No. 36-2 at 1.  He reiterates that x-rays revealed that he suffered a fractured fibula and sprained ankle for which he was prescribed pain medication that he never received.  *Id*. at ¶ 2.  Mr. Wright adds an allegation that he was denied surgery because he did not have health insurance and because of his race "as indicated by medical personnel."  *Id*. at ¶ 3.  Mr. Wright also claims that his left foot is now smaller than his right and is permanently deformed as a result of Defendants' insistence that his injury would heal itself.  *Id*. at 2, ¶ 4.

Defendants Warden Abello and Mr. Murphy oppose the motion on the basis that the affidavit is improper as it states that it is made to the best of Mr. Wright's knowledge, information, and belief and does not show that he is competent to testify.  ECF No. 37.  Additionally, they note that the motion is not signed.  *Id*.  Mr. Wright also has not offered any objective evidence to

---

[2] *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 690 (1978).

establish that there existed a *Monell*-style policy to establish liability on behalf of Montgomery County, nor has he offered evidence beyond a single medical record from the ER that supports his claim that he required narcotic pain medication or surgery.  ECF No. 37-1 at 5-7.

A. Motion to Dismiss

If Mr. Wright's Amended Complaint fails to state a claim upon which relief may be granted pursuant to Rule 12(b)(6), it follows that he is not entitled to summary judgment in his favor and any need to analyze his motion becomes unnecessary.

1. Exhaustion of Administrative Remedies

Mr. Murphy and Warden Abello raise an affirmative defense that Mr. Wright failed to exhaust administrative remedies prior to filing this civil action as required under the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, which provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). Nevertheless, a claim that has not been exhausted may not be considered by this court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 578 U.S. at 639 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

9

Defendants assert that MCCF had a grievance procedure[3] that was available to all detainees, including Mr. Wright, whereby inmates can file a grievance form with a correctional officer in their housing area. ECF No. 39-1 at 7. According to Defendants, the form has an area for an inmate to specify why he disagrees with an action proposed by MCCF. *Id*. They state, without citing a source, that "Plaintiff made clear that he understood the process in that he completed various grievance forms." *Id*. Defendants claim that Mr. Wright noted his agreement with the resolution on some grievance forms and his disagreement on others, however, there is nothing in the record before this court demonstrating that this occurred. *Id*. Lastly, Defendants rely on Mr. Wright's affidavit attached to the Amended Complaint in which he states that the MCCF grievance procedure shields Warden Abello from answering any grievances concerning medical complaints as a basis for finding that Mr. Wright has attempted to thwart the administrative process. *Id*. They state that the procedure does not shield Warden Abello, rather it simply requires the inmate-grievant to state the basis for their disagreement with the proposed action which "Plaintiff refused to take." *Id*. Given the lack of any objective evidence produced by Defendants demonstrating that Mr. Wright has failed to avail himself of the grievance procedure, and Mr. Wright's rebuttal that the grievance procedure was unavailable, the Amended Complaint will not be dismissed for failure to exhaust administrative remedies.

2.   Official Capacity Claim

Mr. Wright has sued Mr. Murphy and Warden Abello in their official capacity, claiming that there is a policy or practice of substituting narcotic pain medications ordered by outside doctors with Tylenol and Ibuprofen without regard to its effectiveness for pain management. ECF

---

[3] Defendants have not provided the court with a copy of the grievance procedure nor have they provided the court with a citation to the regulations governing such a procedure. It is, therefore, impossible to discern what the procedure requires.

No. 22 at 5.  He states that Warden Abello created the policy and Mr. Murphy enforced it.  *Id*. at 5-6.  Defendants assert that this allegation fails to state a claim as it is conclusory and offers nothing more than buzz words to support the notion that there is a policy in place.  ECF No. 39-1 at 8.

An official capacity claim, such as the one raised by Mr. Wright, is treated as a suit against the government entity, *i.e.*, Montgomery County.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Local governmental entities may be liable under § 1983 based on the unconstitutional actions of individual defendants where those defendants were executing an official policy or custom of the local government that violated the plaintiff's rights. *Monell,* 436 U.S. at 690-91.  The *Monell* Court explained that, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury the government as an entity is responsible under § 1983." *Id.* at 694.

In *Connick v. Thompson*, 563 U.S. 51, 60 (2011), the Supreme Court explained (emphasis in *Connick*):

> A municipality or other local government may be liable under [§ 1983] if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation.  *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 692 (1978).  But, under § 1983, local governments are responsible only for "their *own* illegal acts."  *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (citing *Monell*, 436 U.S. at 665-683).  They are not vicariously liable under § 1983 for their employees' actions.  *See id*. at 691; *Canton*, 489 U.S. at 392; *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997) (collecting cases).

Thus, a viable § 1983 *Monell* claim consists of two components:  (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights.  *See, e.g.*, *Bd. of Comm'rs of Bryan Cty., v. Brown*, 520 U.S. 397, 403 (1997); *Kirby v. City of Elizabeth City*, 388 F.3d 440, 451 (4th Cir. 2004), *cert. denied*, 547 U.S. 1187 (2006); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

11

However, a municipality cannot be held liable in a § 1983 action under a theory of respondeat superior. *Monell*, 436 U.S. at 693-94. Indeed, "[i]t is well established that in a § 1983 case a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of 'official municipal policy.'" *Lozman v. City of Riviera Beach*, 585 U.S. 87, 95 (2018) (citation omitted); *see City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (stating that liability attaches "only where the municipality *itself* causes the constitutional violation at issue") (emphasis in original). In other words, a municipality is liable when a "policy or custom" is "fairly attributable to the municipality as its 'own,' and is . . . the 'moving force' behind the particular constitutional violation." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987) (internal citations omitted); *see Davison v. Randall*, 912 F.3d 666, 689 (4th Cir. 2019).

A plaintiff may demonstrate the existence of an official policy in three ways: (1) an express policy; (2) certain affirmative decisions of policymaking officials; and (3) a widespread practice that is so engrained it constitutes a custom, including omissions made by policymaking officials that "manifest deliberate indifference to the rights of citizens." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Brown*, 520 U.S. at 403-04.

"An official policy often refers to 'formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time,' and must be contrasted with 'episodic exercises of discretion in the operational details of government.'" *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999) (alteration in *Semple*; citations omitted). Thus, an entity can be held liable under § 1983 for an unconstitutional

12

action that stems from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 36 (2010).

A plaintiff may also establish *Monell* liability through the acts of a person employed by the entity, who has final policymaking authority. To qualify as a "final policymaker" for *Monell* purposes, the individual must have final authority to establish policy on behalf of the entity with respect to the conduct at issue. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 139-40 (1988); *Lane v. Anderson*, 660 Fed. App'x 185, 197 (4th Cir. 2016). The Fourth Circuit has admonished that "there is a marked difference between 'the authority to make final *policy* [and] the authority to make final implementing *decisions*.'" *Hunter v. Town of Mocksville*, 897 F.3d 538, 555 (4th Cir. 2018) (emphasis and alteration in original, citation omitted). To discern whether a policymaker has "final policymaking authority," courts consider "'(1) whether an individual is constrained by policies of other officials or bodies; (2) whether the individual's decision on the issue is subject to meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority.'" *Hunter*, 897 F.3d at 557 (quoting *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 676 (7th Cir. 2009)).

Moreover, "outside of such formal decision-making channels, a municipal custom may arise if a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *Carter*, 164 F.3d at 218 (cleaned up) (quoting *Monell*, 436 U.S. at 691); *see Simms ex rel. Simms v. Hardesty*, 303 F. Supp. 2d 656, 670 (D. Md. 2003). In such a case, the custom "may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees." *Spell*, 824 F.2d at 1387; *see Holloman v. Markowski*, 661 Fed. App'x 797, 799 (4th Cir. 2016). In

addition, "a policy or custom may possibly be inferred from continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees, or, under quite narrow circumstances, from the manifest propensity of a general, known course of employee conduct to cause constitutional deprivations to an identifiable group of persons having a special relationship to the state." *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (internal citations omitted).

In his opposition to the motion to dismiss, Mr. Wright asserts that he has stated adequately that he was personally impacted by a policy, practice, or custom prohibiting the use of medication prescribed by an outside physician and further prohibits the use of narcotic pain medication. ECF No. 42 at 10. After affording the Amended Complaint a generous construction, the only thing Mr. Wright has established here is that he did not receive narcotic pain medications after he arrived at MCCF. There is no indication in the medical record he submits from the ER that narcotic pain medication should be continued after his discharge, or that a recommendation regarding his pain management was even made. Further, Mr. Wright has not alleged that Defendants Warden Abello and Mr. Murphy were part of his treatment team weighing in on decisions regarding what would be appropriate pain medications for his leg injury. Thus, Mr. Wright's official capacity claim fails both because he has not established there is a policy, practice, or custom that was enforced resulting in a deprivation of his constitutional right and because Warden Abello and Mr. Murphy did not personally participate in the acts alleged.

    4.    Fourteenth Amendment Claim

Mr. Wright is a pre-trial detainee, therefore his claim regarding medical care is governed by a Fourteenth Amendment standard. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) (stating that "the Due Process Clause of the Fourteenth Amendment, rather than the Eighth

Amendment, mandates the provision of medical care" to pretrial detainees "who require it") (citation omitted)). Pretrial detainees "retain at least those constitutional rights [held] by convicted prisoners." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see Patten v. Nichols*, 274 F.3d 829, 834 (4th Cir. 2001). In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Court held that, unlike the standard applied to post-conviction detainees' excessive force claims under the Eighth Amendment, the standard for pretrial detainees' excessive force claims under the Fourteenth Amendment includes no subjective component. *Id.* at 396-397. Several circuits extended this reasoning to hold that the standard for pretrial detainees' claims of inadequate medical care under the Fourteenth Amendment should likewise not include a subjective component. *See, e.g.*, *Darnell v. Pineiro*, 849 F.3d 17, 35 (2nd Cir. 2017); *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018); *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018)).

In *Short v. Hartman*, the Fourth Circuit joined with its sister circuits and held that the *Kingsley* objective standard for Fourteenth Amendment claims "protects pretrial detainees from 'governmental action' that is not 'rationally related to a legitimate nonpunitive governmental purpose' or that is 'excessive in relation to that purpose.'" 87 F.4th 593, 608-09 (4th Cir. 2023) quoting *Kingsley*, 576 U.S. at 396-97. "To state a claim of deliberate indifference to a medical need . . . a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed." *Short*, 87 F.4th at 611. This means that a pretrial detainee "no longer has to show that the defendant

15

had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." *Id*.

Defendants argue that the Amended Complaint fails to allege facts establishing that either Warden Abello or Mr. Murphy "knew or should have known" that Mr. Wright required narcotic pain medication and that their inaction in that regard posed an unjustifiably high risk of harm. To the contrary, Mr. Wright states in his Amended Complaint that he was provided with physical therapy which he found helpful (ECF No. 22 at 3) and, while he claimed it was not powerful enough, he was provided Tylenol and Ibuprofen. In short, he was given medical treatment some of which was helpful, but the pain management was insufficient. Mr. Wright admits that Warden Abello never received a complaint from him "about surgery and ineffectiveness of Tylenol and ibuprofen combo." *Id*. Mr. Wright also states that it was out of Mr. Murphy's hands to do anything about the type of pain relievers he was receiving. *Id*. at 4. These allegations undermine any notion that Warden Abello and Mr. Murphy were in any position to intervene in Mr. Wright's medical care or had any reason to believe it was necessary.

Moreover, Mr. Wright makes clear that what he disagreed with was the "theory" that his injury would heal itself. *Id*. at 3. This disagreement is based on his belief that there is "a type of energy running through [his] body that halts the healing process" and disregards the pain he experienced in the meantime. *Id*. at 3-4. In his opposition, Mr. Wright again relies on his view of what is appropriate treatment for a non-displaced fracture in the lower fibula. He asserts that this is not a question of preferred treatment or disagreement over treatment because in his estimation, without surgery, his leg will be permanently deformed. ECF No. 42 at 15. He states that he is being denied this surgery as part of an effort by these defendants to fraudulently conceal the usage of "this nonmedical monitor" that causes vibrations throughout Mr. Wright's body and prevents

16

his leg from healing. *Id*. This claim does not pass the "plausibility standard" required by Rule 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts to state a claim that is 'plausible on its face.'" *Short,* 87 F.4th at 603 (quoting *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. This aspect of Mr. Wright's claim simply is not plausible.

## CONCLUSION

The Amended Complaint must be dismissed as to Defendants Warden Abello and Mr. Murphy, obviating any need to address Mr. Wright's Motion for Summary Judgment. In addition, Defendants' Motion to Strike Requests for Admissions (ECF No. 47) shall be granted.

A separate Order follows.

July 28, 2025  /s/
Date  DEBORAH K. CHASANOW
  United States District Judge